Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 30, 2015.

Decided May 20, 2015.

**Clyde L. PRICE, Jr., Petitioner**

**v.**

**PENNSYLVANIA BOARD OF PROBATION AND PAROLE, Respondent.**

---

David Crowley, Chief Public Defender, Bellefonte, for petitioner.

John C. Manning, Assistant Counsel, Harrisburg, for respondent.

BEFORE: BONNIE BRIGANCE LEADBETTER, Judge, P. KEVIN BROBSON, Judge, and ANNE E. COVEY, Judge.

OPINION BY Judge P. KEVIN BROBSON.

Petitioner Clyde L. Price, Jr. (Price), petitions for review of an order of the Pennsylvania Board of Probation and Pa-role (Board). The Board denied Price's administrative appeal,[1] through which Price sought to challenge the Board's re-calculation of his maximum sentence. We affirm the Board's order.

Price's conviction and parole history originally resulted in a maximum sentence date of August 18, 2012. Before that date, on April 29, 2012, while Price was on pa-role, he was charged with operating a mo-tor vehicle under the influence of drugs and/or alcohol. The Board lodged an or-der to detain against Price that day and a warrant to commit and detain the follow-ing day. (Certified Record (C.R.) at 45–46.) On June 18, 2012, the Board issued a decision detaining Price pending the reso-lution of the new charges. (C.R. at 47.) The Board avers that on October 1, 2012, "Price was released from the Board's war-rant upon reaching the expiration of his maximum sentence date. (C.R. 71.)"[2] (Board Brief at 4–5.) Thereafter, on July 31, 2013, Price was convicted of two counts of driving under the influence of drugs and/or alcohol and sentenced to county imprisonment for a term of seventy-two hours to six months. (C.R. at 63.) The sentencing court granted Price immediate parole on the sentence. (*Id.*) The Board received notice of the conviction on August 27, 2013. (C.R. at 51.) On September 21, 2013, the Board lodged a warrant against Price.[3] (C.R. at 49.)

1. Price submitted his administrative appeal on a Board form captioned as a "request for administrative remedy."

2. Page 71 of the Certified Record consists of a document entitled "Moves Report" which identifies his sentence status on October 1, 2012, as "paroled" and his parole status as "no recommit action."

3. A Board agent indicated in "Supervision History" notes that the agent attempted to contact Price at his last known approved resi-dence on September 4, 2013, but Price did not respond. (C.R. at 53.) On September 12, 2013, the Board agent contacted the Philadel-phia parole department and learned that Price had been reporting to the Philadelphia parole office. (*Id.*) The Board issued a forty-eight hour detainer and faxed the detainer to the Philadelphia parole office. (*Id.*) The agent also apparently submitted a delinquency re-quest to the Board's main office seeking a declaration that Price had been delinquent since July 31, 2013, the date of his conviction. (*Id.*) On September 21, 2013, the Philadelphia parole office detained Price pursuant to the Board's detainer. (*Id.*)

A hearing report dated November 5, 2013, indicates that Price waived his right to a revocation hearing. (C.R. at 64.) The Hearing Report reflects Price's conviction for driving under the influence and contains a notation for the Board to not provide credit to Price for his time spent at liberty. (C.R. at 57.) On December 27, 2013, the Board issued an order to recommit Price. (C.R. at 73–74.) The recommitment order provides a parole date calculation that reflects the time Price lost while at liberty, the time he spent in confinement for which the Board deemed he was entitled to credit, backtime credit, backtime owed, and the date of his return to Board custody. Based upon the dates the Board used for the calculation, it determined that Price's new maximum date would be November 29, 2016. (*Id.*)

The Board issued a notice of decision with a mailing date of January 6, 2014. (C.R. at 75.) In that decision, the Board recommitted Price to serve backtime of twelve months as a convicted parole violator. The decision also noted the new parole violation maximum date of November 29, 2016. Price responded to that decision by completing and filing, *pro se*, a Board form entitled "Request for Administrative Remedy." (C.R. at 77.) On the first page of the document, Price indicated that he was challenging the Board's January 6, 2014 decision based on the Board's alleged constitutional violations, erroneous credit determinations, erroneous reparole eligibility date, error of law, and recommitment determination. (*Id.*) In the succeeding pages of the document, Price raised two issues: (1) whether the Board has the authority to change the maximum date of a sentence imposed by a trial court judge; and (2) whether the Board had "entered

into an illegal contract with [Price] concerning a judicially-imposed sentence, and had unlawfully punished [Price] pursuant to such illegal contract." (C.R. at 78–80.)

By letter mailed May 19, 2014, the Board rejected Price's administrative appeal, explaining that Price's new conviction vested the Board with the statutory authority to recalculate his sentence and to withhold credit for the time he was at liberty. (C.R. at 85.) With regard to the denial of credit for time at liberty, the Board noted that it had advised Price of this potential penalty, referring to a form Price signed on January 3, 2011, in which he agreed to the conditions of his parole. (*Id.*)

Price, now represented by counsel, filed a petition for review of the Board's decision.[4] On appeal, Price focuses on the following questions: (1) whether the Board failed to credit Price's original sentence with all the time to which he is entitled; and (2) whether the Board's alleged failure to declare Price delinquent before the expiration of his original sentence divested the Board of jurisdiction to recommit Price as a convicted parole violator, and, thus, rendered the Board's decision to extend Price's maximum parole date illegal.

■ The Board, in response, argues that Price failed to raise a challenge to the Board's credit determination when he filed his administrative appeal. Section 703(a) of the Administrative Agency Law, 2 Pa. C.S. § 703(a), provides that a "party may not raise upon appeal any ... question not raised before the agency." This statutory provision is echoed in the Pennsylvania Rules of Appellate Procedure, which provide, in pertinent part, that "[n]o question shall be heard or considered by the court

---

4. Our review is limited to considering whether necessary factual findings are supported by substantial evidence and whether any consti-

tutional rights or errors of law were committed. 2 Pa.C.S. § 704.

which was not raised before the governmental agency." Pa. R.A.P. 1551(a). This rule permits the Court to consider issues not raised before the agency only if the issue a party raises involves questions concerning: (1) the validity of a statute; (2) the jurisdiction of the agency over the subject matter of the adjudication; or (3) issues that the Court believes a petitioner could not have raised before the agency through the exercise of due diligence. Pa. R.A.P. 1551(a)(1)-(3).

The Board is correct in noting that Price did not raise any challenge to the Board's specific calculations relative to the various time periods at issue. Thus, unless Price's challenge to the credit calculations falls within one of the three exceptions contained in Rule 1551(a), Price has waived this issue. Price, however, raises no claim that the applicable statutory provisions are unconstitutional. Price does not claim to have failed to raise the issue based upon the failure to discover the existence of the issue despite the exercise of due diligence. In order for the Court to consider the issue, therefore, the question needs to be one involving an alleged lack of jurisdiction of the Board over the subject matter of the adjudication. That is not the case here, as the Board clearly has jurisdiction in parole matters to determine whether a parolee's new criminal conviction warrants recommitment and a recalculation of a maximum sentence date. Consequently, we agree with the Board's argument that Price has waived the issue of the Board's calculation of Price's credit.

■ Price also contends that the Board's failure to declare Price delinquent following the expiration of his original maximum sentence date divested the Board of jurisdiction over Price. Price asserts:

> This Court has never held that the Board, knowing of the existence of an arrest well in advance of the expiration of its supervision of the parolee, does not have to make a decision declaring the parolee delinquent prior to the expiration of the maximum sentence in order to retain jurisdiction to revoke parole when months later the parolee sustains a conviction.

(Petitioner's Brief at 33.)

Section 6138(a)(1) of the Prisons and Parole Code (Parole Code), 61 Pa.C.S. § 6138(a)(1), provides:

> (a) Convicted violators.—
>
> (1) *A parolee under the jurisdiction of the board* released from a correctional facility, *who, during the period of parole* or while delinquent on parole, *commits a crime punishable by imprisonment,* for which the parolee is convicted or found guilty by a judge or jury or to which the parolee pleads guilty or nolo contender at any time thereafter in a court of record, *may at the discretion of the board be recommitted as a parole violator.*

(Emphasis added.) In *Adams v. Pennsylvania Board of Probation and Parole,* 885 A.2d 1121 (Pa.Cmwlth.2005), *appeal denied,* 588 Pa. 752, 902 A.2d 1242 (2006), this Court, citing the predecessor to Section 6138(a)(1) of the Parole Code,[5] held that "the Board retains jurisdiction to recommit a parolee convicted of a crime committed while on parole even after the expiration of an original maximum sentence." *Adams,* 885 A.2d at 1124. In *Adams,* we rejected the parolee's argument that the Board lost jurisdiction

---

**5.** The Parole Code codified the parole provisions of the Act of August 6, 1941, P.L. 861 (former Parole Act). Section 6138(a)(1) of the Parole Code retains the identical language of repealed Section 21.1a of the former Parole Act, *added by* the Act of August 24, 1951, P.L. 1401, 61 P.S. § 331.21a.

where an *arrest* arising from criminal conduct committed during parole does not occur until after the expiration of the maximum sentence. In *Adams*, the Board took custody of the parolee only after receiving verification of the convictions on the new criminal charges. Thus, despite the fact that there was a gap in time following the expiration of the maximum sentence and the convictions before the Board reasserted its jurisdiction, we held that, under the applicable provision of the former Parole Act, the Board properly maintained jurisdiction to recommit the parolee.

Price argues that, notwithstanding this principle, two decisions this Court cited in *Adams* suggest that, even in such circumstances, the Board is required to take formal action declaring an ex-parolee delinquent in order to retain its right to exercise jurisdiction. First, Price notes our decision in *Kuykendall v. Pennsylvania Board of Probation and Parole*, 26 Pa. Cmwlth. 234, 363 A.2d 866 (1976), characterizing it as standing for "the proposition that the Board does not lose jurisdiction to revoke parole for a post-parole conviction where it has made a finding during the period of parole that the parolee is delinquent." (Price Brief at 29–30.) Based upon *Kuykendall*, Price notes that the Board has the power to declare delinquent a parolee who has unresolved criminal charges at the time his maximum sentence expires "for supervision purposes." (*Id.*) Price suggests that because the Board in *Kuykendall* declared that parolee delinquent, the Board had the

power *and duty* to make such a declaration with regard to Price in order to preserve its right to exercise jurisdiction over him. Having failed to similarly signal its right to exert control over Price before the expiration of the maximum sentence, Price argues, the Board did not have jurisdiction necessary to recommit him.

Price, however, mischaracterizes the holding in *Kuykendall*. Our holding in *Kuykendall* does not express a clear indication that the Board must take some action in order to retain jurisdiction. Rather, we broadly held that "[t]here is no doubt that the Board can recommit and recompute the sentence of a parolee who commits a crime while on parole but is not convicted until after his original sentence would have expired." *Kuykendall*, 363 A.2d at 868. The Court, expounding further and quoting the predecessor to Section 6138(a)(1) of the Parole Code, explained that "[t]his language clearly contemplates [the parolee]'s situation and provides authority for recommittal as a convicted parole violator of a parolee committing a crime while delinquent on parole." *Kuykendall*, 363 A.2d at 869. That the Court mentioned the status of the parolee as having been declared delinquent does not mean that such a declaration is a necessity, especially where the Court's paramount conclusion was based upon the statutory language.[6] *Kuykendall*, 363 A.2d at 869.

Price also relies upon a distinction he perceives in *Williams v. Pennsylvania Board of Probation and Parole*, 654 A.2d

---

**6.** In *Kuykendall*, the parolee was released on parole in July 1971, and he was declared delinquent in March 1972, because his whereabouts were unknown before the expiration of the maximum sentence date. The parolee was not located until the time of his arrest on new criminal charges in December 1973, such that his arrest post-dated the expiration of his maximum sentence date of July 14,

1973. The parolee was convicted and sentenced on the new charges in February 1974, and the Board recommitted the parolee as a convicted parole violator and recalculated his original sentence to extend the maximum sentence. The parolee challenged whether the Board had the statutory authority to recommit him as a convicted parole violator and recompute his sentence. Again, our analysis

235 (Pa.Cmwlth.1995). In *Williams,* the parolee's original maximum sentence was set to expire on October 18, 1993. Williams was charged with new crimes on May 19, 1993, while he was on parole from that sentence. Williams pleaded guilty to the new charges on October 13, 1993. On. December 2, 1993, the Board lodged a detainer against Williams. Williams relied upon a regulatory provision, 37 Pa.Code § 71.1, which continues to provide, in part, that "[i]f [a parole agent] has reason to believe that a parolee has violated the conditions of parole, that action of the Board is necessary, and that an arrest or the lodging of a detainer is appropriate, the agent may apply to his district supervisor for permission to arrest and for the issuance of a 'Warrant to Commit and Retain[.]' " Williams argued that the Board lacked jurisdiction to recommit him based upon its failure to take timely action to initiate proceedings against him. In other words, he argued that the filing of a detainer after the expiration of the maximum sentence (and, in fact, after the date of conviction) divested the Board of jurisdiction. This Court, in referring to the fact that the Board did not become aware of Williams' arrest until after the expiration date, reasoned that "[s]ince no agent had reason to believe that Williams had violated the conditions of his parole before the expiration date, the Board did not err in failing to lodge a detainer prior to that date." *Williams,* 654 A.2d at 236–36. We concluded that, "[u]nder these circumstances, we are not persuaded ... that the board's failure to take administrative action before [the expiration of the maximum sentence date] prevents it from revoking his parole." *Id.*

While *Williams* may be interpreted to suggest that the Court might have been

persuaded that the Board's failure to issue a detainer in some circumstances may lead to a loss of jurisdiction, we are not convinced that the regulatory language in 37 Pa.Code § 71.1 trumps the plain and uncomplicated language of Section 6138 of the Parole Code. Clearly, in *Williams,* the Court considered equitable factors and did not base its decision on the clear and simple language of the Act. Unlike this case, the parolee in *Williams* raised the question of whether 37 Pa.Code § 71.1 required some action on the part of the Board in circumstances such as those at issue in this case, but Price has not made a claim that a doctrine such as laches applies.

Additionally, we agree with the Board's argument that a declaration of delinquency is not an action that the Parole Code demands in this situation. In *Miskovitch v. Pennsylvania Board of Probation and Parole,* 77 A.3d 66 (Pa.Cmwlth.2013), *appeal denied,* 624 Pa. 693, 87 A.3d 322 (2014), the parolee was released on parole in 2001 on a sentence that had a maximum release date in 2008. Miskovitch was arrested in 2004 on new criminal charges. The Board declared Miskovitch delinquent for control purposes in January 2009—a date after the expiration of his original sentence, but before Miskovitch was tried and sentenced. The parolee argued that the Board lacked jurisdiction to recommit him because he did not enter a plea to any of the new criminal charges until after his original sentence had expired. The Board issued a decision recommitting Miskovitch as a convicted parole violator and set a new parole maximum date for 2015. In addressing the jurisdictional question, this Court opined:

> It is well settled law that the Board retains jurisdiction to recommit an indi-

---

was not dependent upon the Board having declared the parolee delinquent prior to the

expiration of his maximum sentence date.

vidual as a parole violator after the expiration of the maximum term, so long as the crimes that lead to the conviction occurred while the individual is on parole. Here, it is undisputed that the crimes to which Miskovitch pleaded guilty ... occurred in July and August 2004. The fact that Miskovitch did not enter his plea until April 27, 2010, after the expiration of the original term on August 26, 2008, is irrelevant. *The Board's declaration that Miskovitch was delinquent for control purposes is also irrelevant; we have recognized that this particular Board action is merely an administrative action that does not signal the final disposition of an offender's case. Passaro v. Pennsylvania Bd. of Probation and Parole* [92 Pa.Cmwlth. 442], 499 A.2d 725, 726 (Pa.Cmwlth. 1985).

*Miskovitch,* 77 A.3d at 73–74 (emphasis added). Although *Miskovitch* involves an instance where the Board *took* action to declare the parolee delinquent, our decision in *Passaro,* cited by this Court in *Miskovitch,* supports the Board's position that such action is merely administrative in nature and does not alter the Board's jurisdiction. Thus, we reject Price's claim that the Board was required to declare Price delinquent in order to maintain jurisdiction over him for parole purposes.

Accordingly, we conclude that the Board did not lose jurisdiction by failing to issue an order declaring Price delinquent, and we affirm the Board's order.

### ORDER

AND NOW, this 20th day of May, 2015, the order of the Pennsylvania Board of Probation and Parole is AFFIRMED.